IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Criminal Action No. **11-cr-38-JLK**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**GARY DOUGLAS WATLAND,**

      Defendant.

---

## MINUTE ORDER

---

Judge John L. Kane ORDERS

      Appointed counsel are put on notice that one of the matters to be discussed at the April 15, 2011 Status Conference is the procedure for the preparation and submission of a litigation budget in accordance with the *Guide to Judiciary Policy*, vol. 7A, § 640. Defense counsel should come to the conference with a proposed timeline for the preparation and submission of their budget. The attached sample case budget from the Federal Judicial Center's Death Penalty Resource Counsel, available at www.fjc.gov, provides an available, but not mandatory, template.

_____

Dated:  April 6, 2011

**SEALED, *EX PARTE* MOTION TO BE HEARD *IN CAMERA***

IN THE UNITED STATES DISTRICT COURT FOR
THE _____ DISTRICT OF _____
_____ DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** , | ) | |
| | • | |
| Plaintiff, | ) | |
| | • | |
| v. | | |
| | | •No. |
| | • | |
| **JOHN SMITH**, | | |
| | ) | |
| | • | |
| Defendant. | ) | |

**MOTION FOR SUPPORT SERVICES AND FOR APPROVAL OF
PROPOSED INITIAL LITIGATION BUDGET FOR EXPERT
INVESTIGATIVE AND OTHER NECESSARY EXPENSES**

Pursuant to 21 U.S.C. ∕848(q)(9) and (10)(B), 7 *Guide To Judiciary Policies And Procedures,* Ch. 6, ∕∕6.02F(Case Budgeting:  Courts are encouraged to require . . . initial litigation budget . . . subject to modification in light of facts and developments that emerge ) and 6.03B(AEDPA investigative, expert and service authorization: incorporating ∕6.02F initial budget procedure), which elaborate on the procedures relating to these statutory provisions, and the fifth, sixth, eighth, and fourteenth amendments to the Constitution, John Smith_, through counsel _____, hereby submits the following Motion for Pretrial Support Services and For Approval of Proposed Initial Litigation Budget for Expert, Investigative and Other Necessary Experts.

Where specific experts are identified as to specific services, this motion also seeks a court

order authorizing counsel to retain those persons at the rates and for the projected initial amounts

stated.

I.  INTRODUCTION

This prosecution commenced _____, when the government filed under

seal a one-count, one-page indictment against _____.  *See* 10/10/92 Indictment in

*United States v.* _____, Since that date, the government has amended and superseded the

indictment four times: on _____, _____, _____, and most

recently, _____.

The Fourth Superseding Indictment, which is 89 pages long and contains 71 counts,

names _____ in 57 of the 71 counts, a number of which constitute death-eligible
offenses.

The indictment includes six killings in which John Smith is implicated, and the government as

intimated that there are a number of other killings which could be used. The charges against John

Smith arise out of an alleged  broad-ranging, continuing criminal enterprise (CCE) and drug

conspiracy that the government calls the  John Smith Enterprise. [1]

The 57 counts naming John Smith cover approximately an eleven-year period, from 1989

to the present; specifically allege criminal wrongdoing in _____, NV,

_____, AZ, _____, MO, _____ IL, and

---

[1]

*See* 4th Superseding Indictment 6, ƒƒ11-14

Washington DC,  and name and/or implicate approximately 19 co-defendants, most of whom

have already entered guilty pleas.  Notably, the *vast majority* of the criminal activity with which John Smith is charged occurred in _____, cities far distant from th district of the trial. It is also notable that the Fourth Superseding Indictment intimates that unspecified criminal activity relating to the CCE/drug conspiracy has occurred in other parts of

the United States yet to be named.[2]

Despite the lengthy time this prosecution has been pending, John Smith s allegedly

pivotal role in the conspiracy, and the far-reaching charges against him, John Smith was not

arraigned until _____.  Given this, the Court has not yet issued its

preliminary, standing discovery order directing the government to provide counsel with basic

information relating to the charges in the indictment.  Indeed, it was not until

_____, upon motion of the Federal Defender s Office, that the undersigned were

appointed as counsel.

Despite their recent appointment, counsel have attempted to accumulate as much

information as possible so as to prepare and outline a plan for the investigation, preparation and

presentation of a defense and to arrive at a principled, reasoned estimate of the defense costs to

be incurred.

To that end, counsel have approached the government regarding comprehensive and

---

[2]

*See, e.g.,* 4th Superseding Indictment at 4, ƒ6 (_____ Enterprise operated in various communities, including those named in indictment).

timely discovery; [3] entered into a joint defense agreement in an effort to minimize costs where possible; evaluated what little information has been made available to date by the government to other defendants; and discussed extensively the issues with and among investigators and potential

experts and Federal Death Penalty Resource Counsel.

The following is the best estimate that can be provided based on information presently available. In some areas, particularly with respect to some expert witnesses, it has not been possible to obtain the name of an actual expert, and thus the amount of expert time and expenses involved are estimated.

Section II, below summarizes the initial proposed budget and, where known, identifies the proposed service provider. Section III outlines the bases for the requests for necessary services.

## II. SUMMARY OF INITIAL PROPOSED LITIGATION BUDGET AND REQUESTS FOR NECESSARY SERVICES

**Necessary Service/Provider**
                                        **Amount**

*Guilt/Innocence Phase*

Forensic Criminalist
                        $*****

Forensic Pathologist
                        $*****

---

[3]

 As the Court is aware, this effort has been unsuccessful, the government stating at the recent joint conference on the pre-authorization status of this case and the related issue of pre-authorization discovery that it was adopting a very restrictive response to the capital defendants discovery requests.

Jury Selection Expert/Trial Consultant
$*****

_____, CA Guilt/Innocence
Stage Investigation

$*****

Legal Research/Law Student
$*****

### *Sentencing/Mitigation Phase*

Mitigation Specialist - _____Ph.D.   $*****

Neuropsychologist

$*****

Social Worker

$*****

Psychiatrist with Expertise in Post Traumatic Stress
        Disorder/Adolescent Development
        $*****

Future Dangerousness Expert

$*****

### *Miscellaneous Case Administration Costs*

Paralegal/Discovery Coordinator
        $*****

Record Collection

$*****

Public Record Copying Costs
        $*****

### *Total Initial Cost*

$*****

## III.  EXPLANATION OF PROPOSED BUDGET AND REQUESTED EXPERTS

21 U.S.C. ∕848(q)(4)-(10), as amended by the 1996 Anti-terrorism and Effective Death

Penalty Act,  provides procedures for assuring adequate representation and furnishing other

services related to the defense of capital cases.  The statute provides, in relevant part, as follows:

> Upon a finding that investigative, expert, or other services are reasonably
> necessary for the representation of the defendant, whether in relation to issues
> relating to guilt or the sentence, the court may authorize the  defendant s
> attorneys to obtain such services on behalf of the defendant and, if so authorized,
> shall order the  payment of fees and expenses therefor...

21 U.S.C. ∕848(q)(9). The statute further sets a threshold of $7,500  apparently meant to
encompass all investigative, expert and other assistance, including expenses   beyond which
investigative  and  expert  costs  (but  not  attorneys fees)  must  be  certified  prior  to  payment
as reasonably necessary by the trial judge, and must be approved by the Chief Judge of the Court
of Appeals, or another Circuit Judge serving as his or her designee.  In this regard, the statute

provides:

> Fees and expenses paid for investigative, expert, and other reasonably necessary services
> authorized under paragraph (9) shall not exceed $7,500 in any case,  unless payment in
> excess of that limit is certified by the court . . . as necessary to provide fair compensation
> for services of an unusual character or duration, and the amount of the excess payment is
> approved by the chief judge of the circuit.  The chief judge of the circuit may  delegate
> such approval authority to an active circuit judge.[4]

21 U.S.C. ∕848(q)(10)(B).

### A.  FORENSIC  CRIMINALIST

Mr  _____

**50 hours (approximately 16 hours per killing) at $180/hour
plus travel and expenses of** $*****

---

[4]   Prior to the April 1996 amendment, district court judges were permitted to approve expert,
investigative and other services in death penalty cases at any level the court believed was reasonably
necessary to the defense.  There was no provision for circuit review or oversight of such approvals.

$*****

The Fourth Superseding Indictment alleges that John Smith was involved in some way in three killings.  Given that each of these killings renders John Smith death-eligible, and that there are witnesses to at least two of the three murders, counsel seek authorization to consult with an expert to conduct an analysis of the crime scene evidence, including but not limited to ballistics testing, blood spatter analysis, bullet trajectory analysis, and gun residue testing to ensure that the descriptions of the killings and shootings are consistent with the physical evidence and the opinions of the expert medical examiners who conducted autopsies on the bodies.  As this catalogue of issues indicates, one or more crime scenes may require more than one expert.

**[Additional explanation . . . ]**

As the attached Declaration of _____ reflects, from 1990-1996, _____ was a deputy coroner who conducted thousands of death investigations.   Given this, _____ will be able to provide counsel substantial advice in selecting appropriate experts and eliminating unnecessary duplication.  It is estimated that these crime scene investigations will take approximately 16 hours for each murder.

B.  FORENSIC PATHOLOGIST

**Unidentified Expert**
**60 hours (20 hours per killing at $***/hour)**
**plus travel and expenses of $**

$**********

As to the six killings identified in the Fourth Superseding Indictment, counsel seek authorization to retain a forensic pathologist to conduct a review of the autopsy record, including photographs, x-rays, toxicology results, and the like.  This assistance is necessary to ensure the

accuracy and completeness of conclusions reached by the coroners and/or medical examiners in

the six killings and to assist counsel in determining whether statements made regarding the events

are consistent with the physical evidence, including the condition of the decedent s body, the

manner of infliction of wounds, the time of death, and the mode of death.  It is estimated that a

preliminary review of the requested materials in this case, and consultation with counsel will

require 10 hours per killing.

C.  JURY  SELECTION  EXPERT/TRIAL  CONSULTANT

> **200 hours at $**  per hour**
> **plus travel and expenses of** $*****
>                   $*****

As described more fully in Section I, above, the Fourth Superseding Indictment against

John Smith alleges a broad-ranging CCE and drug conspiracy at the center of which is what the

government calls the  John Smith Enterprise.   According to the evolving theory of the

government relating to this enterprise,  John Smith  led, organized and administered  this CCE.

As Dr. _____ explains in her affidavit, John Smith grew up in, and the principal

events relating to the Fourth Superseding Indictment commenced in,  the heart of

_____ , a segregated community populated largely by African Americans who,

like Mr. John Smith s father and mother, fled the South in the hopes of providing a better

environment for their children.   Regrettably, for years this community has been, and indeed it

continues to be, one rife with violence and notorious for its threat of individual annihilation not

only at the hands of other children from the _____ community, but from adults and

9

law enforcement officers as well.

This potential capital case, then, will be tried against a backdrop of complex racial and

community issues that must be analyzed and developed pretrial, as well as explored extensively

in voir dire, including the death-qualification process.[5]  There are procedures that can maximize
the effectiveness of voir dire concerning attitudes towards the death penalty, as well as attitudes
relating to the racial, social, and community issues arising out of the unique environment of

_____.

Counsel anticipate that this work will require approximately *** hours, at the hourly

rate of $***, for a total of $ *******.

D.  LOS ANGELES GUILT/INNOCENCE STAGE INVESTIGATION/LAPD

MISCONDUCT

**_____, Investigator, d/b/a _____ Investigations,
Inc. _____, MO**

**820 hours at $75.00/hour ($61,500.00) and $6,750 expenses
       $68,250.00**

As outlined in Section I, above, in an effort to reduce the costs of defense counsel

representing all death-eligible defendants have conferred about areas where investigative costs
can

be shared so as to avoid duplication.  One common area of investigation is that much of the

government s evidence against defendants will be based on the presumed cooperation and

_____

[5]

*See Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 20 L.Ed.2d 776. (1968); *and
Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.E.d2d 841 (1985).  Notably,
individual, sequestered voire dire permits the parties to better explore and ferret out bias among
venire members.  *See* Nietzel and Dilehay,  The Effects of Variations In Voire Dire Procedures in
Capital Murder Trials, 6 *Law and Human Behavior* 1-13 (1982).

testimony of a number of the over ____ persons who have accepted plea agreements that require

their cooperation and approval.

All defense counsel also agree that because the government alleges that John Smith heads

the CCE that originates and functions in _____, and because many of the alleged

wrongs of _____ arise out of that area, he will focus his guilt/innocence

investigation on events occurring in this portion of the United States.

As reflected by the Declaration of Investigator _____, after discussions with

and among counsel, and after reviewing the few meaningful documents[6] that the government has
made available to date, it is apparent that the _____ portion of the guilt/innocence
investigation will be extensive.[7]  That is, counsel anticipate that the investigation will take
approximately 720 hours, including 20 hours of interview of and consultation with, the
defendant; 300 hours to identify, locate and interview witnesses; 300 hours to analyze available
crime scene, police and surveillance reports; 100 hours to obtain, read, review and analyze media
reports and other information.   This investigation is also anticipated initially to require about
$**** of expenses, including $*****  in travel expenses; $**** in copying law enforcement
records; $***** in mail and courier service expenses; and $***** in telephone and facsimile

transmission.

F. LEGAL RESEARCH/LAW STUDENTS                     **$6,000.00**

**Unidentified Law Students 300
hours at $20.00 per hour**

The United States Judicial Conference Report on Federal Death Penalty Cases

acknowledges the need for, and the complexity of, motion practice in capital cases.

---

[6]

As stated to the Court previously, the government s initial document production to counsel
for the other defendants included more than 27,000 pages.  Most of these documents are useless to
counsel at this early point in the litigation, and shed little light on the government s evidence against
John Smith or its theories of prosecution.

[7]

*See* Leslie Gangi Declaration at 2-4, *ƒƒ*6 a - e.

The relative novelty of the federal death penalty laws, particularly those enacted in the 1994 crime bill, means that many legal issues concerning the interpretation and constitutionality of those statues have not been authoritatively resolved.  To date, the circuit courts of appeals have decided only a handful of federal death penalty cases.  Lawyers and judges agree that these issues are time-consuming to litigate.  Several judges commented that they, or their law clerks, devoted months of preparation to a federal death penalty case.  Defense lawyers have an ethical obligation to raise challenges to the manner in which both the guilt and penalty phases of the trial are conducted, because if an issue is not raised at trial, the defendant generally cannot benefit, even if a ruling by a higher court subsequently favors the defense position. Consequently, newer statutes tend to produce more constitutional and interpretive issues than statutes that have already been the subject of extensive appellate and Supreme Court consideration.  Many issues may arise in a single case.  In one multi-defendant case, for example, a judge estimated that 2,800 legal pleadings had been filed by the parties.

Counsel believe that this case presents a substantial number of complex legal issues and,

that, consistent with the recognition in the Judicial Conference Report,[8] the use of law clerks will

reduce significantly the costs of necessary legal research. Counsel anticipate that this will involve

initially 300 hours of law clerk work at hourly rate of $20.00, for a total of $6,000.00.[9]

G.  MITIGATION  SPECIALIST

_____ **Ph.D.**

---

[8]

     *See* Judicial Conference Report On Federal Death Penalty Cases ( When these assistant counsel are used effectively, total costs of attorney compensation are reduced, because the average hourly rate is reduced.  For example, one appointed lawyer . . . hired a less experienced lawyer at $45 per hour to listen to thousands of hours of wiretap tapes and identify the important parts, thus achieving substantial savings ).

[9]

     The same research performed by appointed counsel, paid at the rate of $125.00 would

cost the government $37,500.  This is a significant $***** savings.

**300 hours at $80 per hour and $**** in expenses**
$********

At sentencing, a defendant must be permitted to present evidence on all aspects of his

character, record, and/or the circumstances of the offense that would mitigate a sentence of

death.[10] This constitutional and statutory standard requires counsel to conduct an in-depth

investigation of John Smith s family, his family dynamics, culture and patterns of behavior that

were transmitted inter-generationally, and, of course, investigate, prepare, and present a reliable

social, medical, psychiatric and educational history of John Smith, himself.  The Supreme Court

has recently underscored the critical importance of such an investigation,  granting federal

habeas relief to a state death row inmate whose attorneys failed to discharge their  obligation to

conduct a thorough investigation of the defendant's background.  See 1 ABA Standards for

Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980). *Williams v. Taylor*, ___ U.S. ___, 120 S.Ct.

1495, 1515 (2000).

The development of a basic social history, the crucial first step in any mitigation

investigation, demands extensive interviews with John Smith himself, as well as family members

and others who observed him over time and during critical periods, including physicians, mental

health professionals, law enforcement officials social service providers, teachers, neighbors,

peers, and clergy.[11]  In addition to extensive personal interviews, the mitigation investigation

requires a comprehensive, far-reaching search for pertinent documents.[12]  All of this evidence

must be collected, compiled, and maintained in a manner and by a means accepted both in the

---

[10]

    *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

[11]

    *See* _____ Affidavit at 4, *ƒ*11.

[12]

    *See* _____ Affidavit at 5-7, *ƒƒ*14 a - h.

legal and medical communities.[13]

Dr. _____, known to be one of the most experienced mitigation specialists

in the United States, opines that the investigation in this case is  one of the most complex tasks I

have undertaken as a mitigation specialist appointed in five U.S. District Court federal capital

trials and well over thirty state capital cases.   As itemized in her affidavit, after consultation

with counsel, preliminary interviews with John Smith and certain family members, and a review

of the few records presently available, Dr. _____ and counsel estimate that the

investigation will take 300 hours, and require approximately $*****  in necessary, associated

expenses, for a total of $******[14]

## H.  NEUROPSYCHOLOGIST

**_____, Ph.D.**
**100 hours at $175 per hour and $****  in travel expenses        $ *******

John Smith requires evaluation and assessment by a multi-disciplinary team of medical

and mental health professionals with expertise in trauma, neuropsychology, and psychiatry.  No

single expert exists who is capable of conducting the specialized diagnostic tests and
assessments

that will lead to a reliable medical or psychiatric diagnosis.  Documentary evidence and
interviews

with lay and professional witnesses who observed John Smith at various stages in his life offer a

---

13

*See* _____ Affidavit at 5, ƒ14.

14

*See* _____ Affidavit at _____.

14

constellation of factors that were most likely pivotal in his development.  These factors include

exposure to alcohol in utero owing to maternal drinking, extreme neglect in early childhood, chronic physical abuse in childhood, persistent exposure to life-threatening events in his community, the loss of a father and an older brother who were both murdered within blocks of the defendant s home, and repeated threats of being maimed or killed.

Against this backdrop, neuropsychological testing of John Smith is necessary to

determine the existence, severity, and effect of brain damage and cognitive impairment on his

behavior and mental functioning.  Neurologic disease can cause impaired judgment and reasoning,

distorted perceptions of reality, loss of contact with reality, memory loss, social ostracism,

disrupted academic performance, learning disabilities and aggressive behavior.  Acquired brain

damage can also have psychiatric consequences such as confusion, lability, depression,

irritability, and paranoia.

A reliable and competent neuropsychological assessment of John Smith requires

administering the Halstead-Reitan test battery and additional standard neuropsychological tests

designed to test frontal, parietal, temporal, and occipital lobe functions.  The neuropsychologist

will assess John Smith s ability to perceive, process, and remember information, to make

decisions, and to understand the long-term consequences of his actions through a variety of

modalities.  The battery of tests includes individualized intelligence and academic tests.  So far as

can be determined to date, and given his lack of a prior criminal history, John Smith has never

been competently and comprehensively tested in an academic, mental health, or forensic setting.

The tests to be administered are aimed at identifying sensory ability, motor strength and speed, problem-solving ability, attention deficits, and memory performance.

## I.  SOCIAL WORKER/PSYCHOLOGIST WITH EXPERTISE IN SOCIAL HISTORY OF PERSONS WITH HISTORY OF EXPOSURE TO VIOLENCE/TRAUMA

_____**Ph.D.**
**125  hours at $90 per hour**
**plus travel and expenses of $*****

**$********.**

Consistent with the mitigation investigation overview provided in Section III.G., above, after the mitigation specialist and others have gathered information, a social worker or psychologist, in conjunction with other team members, will prepare and present a reliable social history of John Smith and his family that will constitute the centerpiece of the penalty phase defense.  The social history will focus especially on the major influences that have shaped John Smith s life, including his cultural and ethnic background as an African American born and raised

in _____ in an atmosphere of endemic, unrelenting, life-threatening violence.  Based on

the social history and the mitigation investigation, as well as opinions of other experts, this expert will also assess the presence and effect of childhood maltreatment, neglect, alcoholism, domestic violence, loss of siblings and loved ones, abandonment, inadequate psychiatric and medical care, sexual assault, and any other factors that may have contributed to John Smith s psycho-social development and functioning.

This expert will also review medical, school, juvenile, social service, psychiatric, employment, probation and prison records for John Smith and his family members, interview

selected family members, interview teachers, counselors, and others who are reliable informants and observed John Smith over time, and interview John Smith, himself.  As required by the standard of care governing social work or psychology, the interviews with John Smith will be conducted over time to observe changes in behavior and to allow the expert to overcome barriers associated with traumatic backgrounds similar to those of John Smith.

Based on past experience of counsel and experts and/or potential experts with whom counsel have consulted, this work will require approximately 195 hours at $**** per hour, for a total cost of approximately $***** .   Counsel also anticipate travel, lodging, and meal expenses of $******

## J. PSYCHIATRIST WITH EXPERTISE IN POST-TRAUMATIC STRESS DISORDER AND ADOLESCENT DEVELOPMENT

**_____, M.D.**
**60 hours at $250.00 per hour and $***  travel expenses**
**$********

As Dr. _____ states[15] inexplicably, despite having been raised in a community wracked with violence, poverty, terror, and uncertainty, the offenses set out in the Fourth Superseding Indictment are John Smith s first serious criminal charges.   The psychological source of much of John Smith s unexplained behavior as reflected in the Fourth Superseding Indictment may be post-traumatic stress disorder (PTSD), a major mental illness seen in those who have survived overwhelming and life-threatening events and/or environments.

PTSD is a serious mental disease that may be relevant to all stages of the present legal proceedings against John Smith.  In order to determine if he has PTSD and, if so, its effect on his behavior and perceptions, an expert in PTSD is required to interview John Smith and his family,

to review medical and social records, and to order appropriate diagnostic tests.  PTSD is a

commonly misdiagnosed major mental disorder, and is especially difficult to diagnose in the

presence of other disabilities that may overshadow or mask its symptoms, such as, for example,
depression.  Psychiatrists with expertise in PTSD take diagnostic overshadowing, brain damage,
and other medical diseases into account when evaluating and diagnosing patients who
demonstrate symptoms of PTSD and/or who have been exposed to events and/or environments
strongly associated with triggering PTSD.  Because John Smith is an African American, the
psychiatrist must also be experienced in cultural issues in order to consider cultural factors when

arriving at an opinion and diagnosis.

This psychiatric evaluation and document review will take 60 hours at $250.00 per hour,

and involve travel expenses of approximately $*****, for a total of $*****.

K.  FUTURE  DANGEROUSNESS  EXPERT

**_____  Ph.D.**
**100 hours at $185/hour, and $****  travel expenses**
**$****

By letter dated _____, the government informed counsel that as one of the

non-statutory factors supporting a sentence of death, it intended to rely on  future

dangerousness. [16]  The issue of future dangerousness  frequently becomes the cental issue in a

jury s capital deliberations.  As Jonathan R. Sorensen explains in an article entitled  Social

Science in the Prediction of Future Dangerousness,

The issue of future dangerousness pervades the sentencing of
capital defendants. . . .

Taken together, . . . recent research suggests that the potential for
future violence and the need for incapacitation are foremost concerns in the

---

[16]

12/9/99 Letter of _____  to attorney _____ at 1, ʄ1.

minds of jurors.  The picture is bleak for the average capital defendant when the jury is

[15] *See* _____ Affidavit at 3, ƒ7.

confronted with the egregious details of the offense . . .

. . .

One approach that is often overlooked in the defense strategy is to present social scientific evidence on the issue of future dangerousness.  Social scientists may be useful in attacking the issue of future dangerousness on three fronts: (1) refuting predictions by the state s clinicians; (2) presenting information on the recidivism of murderers in general or among a group of murderers with characteristics similar to the defendant; and (3) educating the jury about the value of a sentence of life of LWOP in incapacitating offenders.

This necessary service will require 100 hours at $185.00 per hour and travel expenses of $*****  for a total expense of $*****.

## L.  PARALEGAL/DISCOVERY  COORDINATOR

Ms.  _____

**$******

At the conclusion of a two-day meeting of counsel for the four capital-eligible defendants in this case, their staff, and the defendants  principal experts and advisors, all arrived at the inescapable conclusion that the scope of this case demands a *centralized* position for document/discovery management.  It appears plain that the position will often require substantially more than a 40-hour work week, and frequently as much as 60 hours per week.

All believe this task *must* be entrusted to a single person with a comprehensive overview of case administration and for all defense teams.  In theory, this will prevent documents and tasks

from falling through the cracks; eliminate the duplication of tasks and expenses; improve and

centralize communication; and reduce the time and expense associated with the massive discovery

and investigation that will be required in this case.

While this role has been assigned to a salaried paralegal, neither the general duties of a

paralegal in this case, nor the duties of the discovery coordinator appear to fall within the bona fide administrator, professional, or executive categories of the exemption in 29 U.S.C. /213(a)(1) to the overtime requirements of 29 U.S.C. /207(a), of the Fair Labor Standards Act, as amended

(FLSA).[17]

Because it is apparent that the paralegal/discovery coordinator s duties will involve an

over-40-hour work week commitment, the defendants seek a $40,000 authorization for the extra

time required of the position, such to be in addition to the approved paralegal rate.

## M. RECORD COLLECTION COSTS

**Miscellaneous unidentified persons**
**\*\*\*\*\* hours at $30.00 per hour**

**$\*\*\*\*\*\***

As stated in Section I, above, there are approximately 19 co-defendants who have entered

pleas of guilty and who have agreed to cooperate with the government, in addition to countless

---

[17]

   *See* 29 C.F.R. //541.2, 541.3 and 541.302.  See, most especially, 3/20/98 Opinion Letter of the Wage and Hour Division of the United States Department of Labor, 1998 WL852667; 2/19/98 Opinion Letter of the Wage and Hour Division of the United States Department of Labor, 1998 WL 852691; 2/19/98 Opinion Letter of the Wage and Hour Division of the United States Department of Labor, 1998 WL 852701; 4/13/95 Opinion Letter of the Wage and Hour Division of the United States Department of Labor, 1995 WL 1032484; and 11/10/94 Opinion Letter of the Wage and Hour Division of the United States Department of Labor, 1994 WL 1004882.

other cooperating witnesses not presently known, but identifiable upon reasonable inquiry.

Many of these persons reside in the_____, which is in fact a conglomeration of

over __ separate municipalities with sometimes separate and sometimes overlapping record

keeping and service provider entities and systems.  Thus, for example, a criminal
history/criminal

record search of a single  cooperating co-defendant in _____ will involve, in

_____ County alone, a search of the records of a number of different law
enforcement agencies, different municipalities, different courts, and different jails.  Those who
have worked on state-court criminal cases in the Los Angeles area inform counsel that document
searches, which are fundamental to any investigation, can be back-breaking.

The necessary document search itself will require 200 hours at $50.00 per hour for a total

expense of $10,000.00

N.  PUBLIC  RECORD  COPYING  COSTS

**Variable governmental/institutional rates**
**$*******

As described in Section III.M., above, the document search for guilt/innocence

investigation, not to mention the mitigation investigation, will be substantial.  Local government

fees for copying costs vary, and can be substantial.  Counsel estimate this expense to be $15,000.

## IV.  CONCLUSION

As Dr. _____, a nationally respected and experienced mitigation specialist

observes, the breadth and scope of the necessary investigation and charges in this case are

extraordinary.  The indictment covers an eleven-year period, sets out numerous acts occurring

across over half of the United States, and strongly intimates that other acts in other parts of the

United States will surface and be relevant to the trial of this case at guilt/innocence and/or at

sentencing.  Counsel, mindful of their duty to act prudently and economically, and have framed

this budget in light of this recognition, recognizing also their paramount obligations to John Smith

in this case.

WHEREFORE, John Smith requests this Court

A. To find that the investigative, expert, and other services identified in John Smith s

initial budget are reasonably necessary to the representation of the defendant in connection with

issues relating to guilt or innocence and to sentencing; and

B. To enter an order approving the initial budget and authorizing counsel to expend the

following amounts on the following necessary services, named experts, or investigators:

| Necessary Service/Provider | |
| --- | --- |
| | Neuropsychologist |
| *Guilt/Innocence Phase* | |
| | Social Worker with Expertise in effects of Violence/Trauma |
| Forensic Criminalist | |
| Forensic Pathologist | |
| Jury Selection Expert/Trial Consultant | Psychiatrist with Expertise in Post Traumatic Stress Disorder/Adolescent |
| Guilt/Innocence Stage Investigation $10,800 | |
| Legal Research/Law Student | |
| *Sentencing/Mitigation Phase* | |
| Mitigation Specialist | |

Development

Future Dangerousness Expert

### *Miscellaneous Case Administration Costs*

Paralegal/Discovery Coordinator
**Amount**

$*****

$******

$*****

$*****

$*****

$*****

$*****

$*****

$*****

$*****

$*****

Record Collection

Public Record Copying Costs
$*****

$*****

Respectfully submitted,

_____

_____
COUNSEL FOR THE
DEFENDANT


**THIS EX PARTE MOTION WAS NOT SERVED ON COUNSEL FOR THE GOVERNMENT**


**[RESUMES AND AFFIDAVITS OF EXPERTS
AND OTHER SERVICE PROVIDERS
ATTACHED]**